In Re: Alignment of Election Districts.

608

Argued April 30, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*William F. Sullivan, Jr.,* for appellant.

*Harry Wolov,* for County Board of Elections of Philadelphia, appellee.

*Frank M. Jackson,* for Democratic City Committee of Philadelphia, appellee.

OPINION PER CURIAM, May 9, 1974:
Orders reversed. Opinion to follow.
Mr. Justice NIX dissents.

---

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:
These appeals arise from orders of the Court of Common Pleas of Philadelphia County granting the petitions of the Philadelphia County Board of Elections for the consolidation and realignment of various election districts of the 14th Ward. Appeals were taken to the Commonwealth Court, but were then transferred to this Court pursuant to Section 503 (b) of the Appellate

Court Jurisdiction Act, 17 P.S.§211.503(b), since they involved the right to public office. *See Smethport Area School District v. Bowers,* 440 Pa. 310, 269 A.2d 712 (1970). After hearing argument on April 30, this Court, because of the public importance of a prompt disposition of these appeals, entered a per curiam order on May 9, reversing the orders below and indicating that an opinion was to follow. This is that opinion.

Appellant raises two arguments for reversal of the orders of the court below: (1) that the court abused its discretion in consolidating election districts on the eve of the filing deadline for nominations for district offices; and (2) that the notice provisions of Section 2704 of the Election Code, *as amended,* 25 P.S. §2704, were not complied with. We base our reversal on the lack of compliance with Section 504 and need not address appellant's other argument.

Prior to 1943 the courts of quarter sessions were vested with exclusive and unfettered jurisdiction in the formation and division of election districts. *See, e.g., In re Division of the Township of Bern,* 115 Pa. 615, 9 A. 62 (1887). Article 8, Section 11 of the Pennsylvania Constitution of 1874, *as amended,* November 6, 1928, contained this grant of power, providing as follows:

"Section 11.   Election districts

"Townships, and wards of cities or boroughs, shall form or be divided into election districts of compact and contiguous territory, in such manner as the court of quarter sessions of the city or county in which the same are located may direct; but the courts of quarter sessions, having jurisdiction therein, shall have power to divide or change the boundaries of election districts whenever the court of the proper county shall be of opinion that the convenience of the electors and the public interests will be promoted thereby." In 1937 the Pennsylvania Election Code was enacted. Act of June 3, 1937, P. L. 1333, §1 *et seq., as amended,* 25 P.S.

§2600 *et seq.* Article V(A) of the Election Code covered, *inter alia,* election districts. This section was found to be unconstitutional, however, because restrictive of the rights of the courts of quarter sessions to divide election districts as provided in Article 8, Section 11 of the Constitution. *See, e.g., In re Election District,* 86 Pitts. L. J. 320 (Pa. C. P. 1938). Consequently, in 1943 the constitutional provision was amended to provide as follows:

"Section 11. Election districts

"Townships and wards of cities and boroughs shall form or be divided into election districts of compact and contiguous territory and their boundaries fixed and changed *in such manner as may be provided by law.*" (Emphasis added.) Thereafter, Article V(A) of the Election Code was reenacted without change by the Act of April 4, 1945, P. L. 143.

For purposes of these appeals the pertinent portion of the Election Code is Section 504, which outlines the powers of the court in regard to the realignment of election districts. The court may act upon the petition of the county board of elections *or* upon the report and recommendations of the county board of elections as to the petition of twenty registered electors. The standard to be applied by the court in its decision is the promotion of "the convenience of electors and the public interest." The additional proviso contained in Section 504 limiting the power of the court to realign election districts, and particularly apposite to the issue before this Court, reads as follows: "Provided, however, That the court shall not make any final order for the division, redivision, alteration, formation or consolidation of election districts until at least ten days after notice shall have been posted in at least five public and conspicuous places in the district or districts to be affected thereby, one of which notices shall be posted on or in the immediate vicinity of the polling place in each such district.

Such notice shall state in brief form the division, redivision, alteration, formation or consolidation of election districts recommended by the county board, and the date upon which the same will be considered by the court, and shall contain a warning that any person objecting thereto must file his objections with the clerk of the court prior to such date. Upon the making of any such final order by the court, a copy thereof shall be certified by the clerk to the county board of elections." Act of June 3, 1937, P.L. 1333, §504, 25 P.S. §2704.

Our review of the records in the instant appeals reveals the following chronology of events: notices of the proposed consolidations were posted on February 27, 1974, the petitions were filed on March 4, a hearing was begun on March 8, and the final orders consolidating the election districts were entered on March 11, 1974. The petition of the County Board of Elections is the foundation of all the subsequent proceedings. *In re Division of the Fifth Ward of the City of Bethlehem,* 31 North. 314 (Pa. C. P. 1948). Prior to the filing of such petition the court is without power to set a hearing date or to entertain objections to any consolidation proposal. In the present appeals the court considered the petitions for consolidation only four days after filing and final orders were entered only seven days after filing. This action was clearly in contravention of Section 504 of the Election Code. Our review of the transcript of the lower court hearing indicates that appellant, appellees, and the court were of the mistaken belief that February 27, the date notices were first posted, was the determinative date. This concordance is not constrictive of our power of review, however, since the limitations on the court's power created by Section 504 are *jurisdictional* requirements and cannot be waived. Full compliance must appear of record. *In re Division of the Fifth Ward of the City of Bethlehem, supra.*

Accordingly we reiterate our order of May 9, 1974, that the orders below are reversed.

Mr. Justice EAGEN and Mr. Justice MANDERINO concur in the result.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

I dissent.

The majority in reaching its conclusion that the orders of the court below must be reversed because of lack of compliance with the notice provision of §504 of the Election Code[1] has chosen to ignore the clear language of the section and has judicially engrafted a requirement that the legislature did not deem necessary to impose. In setting forth the power of the court to act under §504 the legislature provided in pertinent part: "Upon the presentation of any such petition by the county board, or upon the filing by the board of its report and recommendations as to any petition presented by qualified electors under the provisions of section 503 of this act, the court of quarter sessions may make such order for the division, redivision, alteration, formation or consolidation of election districts, as will, in its opinion, promote the convenience of electors and the public interests. Provided, however, That the court shall not make any final order for the division, redivision, alteration, formation or consolidation of election districts until at least ten days after notice shall have been posted."

Under the express and unambiguous language of this section the only time requirement relating to the notices was that they must be posted at least ten (10) days before the entry of any final order.[2] The chronology recited in the majority opinion shows that posting oc-

---

[1] 1937, June 3, P. L. 1333, art. V, §504; 1945, April 4, P. L. 143, 25 P.S. 2703.

[2] No objection has been raised in this appeal as to the content of the notices or the manner in which they were posted.

curred on February 27, 1974, and the final orders consolidating the election districts were entered on March 11, 1974, *twelve (12) days later.*

The only objection raised by appellant as to the timeliness of the notice was that the hearing was held nine (9) days from the date of the posting. To insure full compliance with the section in question the court, in discussing this issue in its opinion, explained: ". . . the Court elected to proceed with the hearing, since both petitioners and respondent were represented by counsel and had witnesses present at the hearing, with the understanding that additional testimony by the respondent would be heard on March 11, 1974, and that no final order would issue from the Court until such testimony had been received. Such afforded the respondent twelve days notice before entry of a final order."

Totally disregarding the question raised by the parties upon appeal the majority choose to interpret this section as requiring the notice to be given *after the filing* of the petition of the county board or its report and recommendations. Not only does the majority fail to point to the the language of the statute or case law that would suggest such a construction, it cavalierly dismisses the fact that none of the parties below offered such an interpretation: "Our review of the transcript of the lower court hearing indicates that appellant, appellees, and the court were of the mistaken belief that February 27, the date notices were first posted, was the determinative date."

The only explanation offered by the majority for its avoidance of the clear language of the section is the cryptic statement: "The petition of the County Board of Elections is the foundation of all subsequent proceedings." The suggestion that the action does not commence until the presentation of a petition by the county board or the filing by the board of its reports and

recommendations completely loses sight of the section that immediately proceeds it.[3]

Even more surprising is the statement by the majority that: "Prior to the filing of such petition the court is without power to set a hearing date. . . ." It is quite common that courts set a specific time in their calendar during the term to entertain special matters of this nature. It is equally untenable to argue that a statutory notice provision must necessarily run from the filing of a petition or a report and recommendation in absence of express language to that effect.[4]

Here the clear legislative import was to afford objectors at least ten (10) days to contest the county board's

---

[3] See section 503 which provides: "Upon the petition of twenty registered electors of any township, borough, ward or election district, to the court of quarter sessions of the proper county, praying for the division or redivision of such township, borough, ward, or election district into two or more election districts, or for the alteration of the bounds of any election district, or for the formation of one or more election districts out of two or more existing election districts, or parts thereof, or for the consolidation of adjoining election districts, the said court shall refer the said petition to the county board of elections, which shall make a full investigation of the facts, and shall report to the next term of the court its findings and recommendations as to the division, redivision, alteration, formation or consolidation of election districts prayed for. If the county board shall find that a division, redivision, alteration, formation or consolidation of election districts will promote the convenience of the electors and the public interests, it shall recommend a proper division, redivision, alteration, formation or consolidation of election districts, and shall accompany its report with a map, plot or draft of the new election district or districts proposed by it, if the same cannot be fully designated by natural lines. Such petitions may specify the boundaries desired by the petitioners, and may be accompanied by a map setting forth such boundaries." 1937, June 3, P. L. 1333, art. V, §503; 1945, April 4, P. L. 143, 25 P.S. §2703.

[4] This is not an instance where the information to be conveyed is only contained in the pleading initiating the proceeding, the act specifically requires that the notice set forth the pertinent information necessary to permit any party with an adverse position to respond.

proposals. This was accomplished and I can find no basis for a finding of a violation of either the spirit or the letter of the notice requirement.

I am also fully satisfied that the court below did not abuse its discretion in consolidating the election districts herein. From a reading of this record and the excellent opinion of the court below it is clear to me that the criteria set forth in the statute was properly applied and that the court was correct in entering an order approving the request of the county board.

I would affirm the orders of the court below.